# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## HUNTINGTON DIVISION

CESAR ONIEL CENTENO PASTRANA,
YIMI JOSUE MANIA, VICTOR ANTONIA
ORDONEZ CASTILLO, RONI JOSUE
HERNANDEZ GARCIA, and WILSON
LENOEL PEREZ MARAGIAGA, by
and through their next friend, KYLE
SLONE,

        Petitioners,

v.                                    CIVIL ACTION NO. 3:26-cv-00486

DAVID VENTURELLA, Acting Director,
United States Immigration and Customs Enforcement,
MARKWAYNE MULLIN, Secretary of Homeland Security,
TODD BLANCHE, Acting United States Attorney General,
DAVID KLUEMPER, Supervisory Detention and Deportation Officer,
United States Immigration and Customs Enforcement,
KENNETH BARNETT, Supervisory Detention and Deportation Officer,
United States Immigration and Customs Enforcement, and
JOHN RIFE, Field Office Director, Philadelphia Field Office,
United States Immigration and Customs Enforcement,
in their official capacities,

        Respondents.

## RESPONSE TO ORDER TO SHOW CAUSE AND MOTION TO DISMISS[1]

Come Now Respondents, DAVID VENTURELLA, *Acting Director, United States Immigration and Customs Enforcement*; MARKWAYNE MULLIN, *Secretary of Homeland Security;* TODD BLANCHE, *Acting United States Attorney General,* DAVID KLUEMPER, *Supervisory Detention and Deportation Officer, United States Immigration and Customs Enforcement* KENNETH BARNETT*, Supervisory Detention and Deportation Officer, United*

---

[1] This response is limited to Petitioner Perez-Maradiaga, separate responses have been filed to address the other petitioner.

*States Immigration and Customs Enforcement;* and JOHN RIFE*, Field Office Director, Philadelphia Field Office, United States Immigration and Customs Enforcement; in their official capacities,* (collectively "Respondents"), by counsel, Matthew C. Lindsay, Assistant United States Attorney for that District, and hereby respond to the Order to Show Cause (ECF No. 5) for the Petition for Writ of Habeas Corpus (the "Petition") (ECF No. 1) specific to **Petitioner Perez-Maradiaga**.

In recent months, this District has received a plethora of habeas petitions from individuals detained by Immigration and Customs Enforcement ("ICE") pending their removal proceedings. Those petitioners have in large part successfully argued that they are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2).[2] This case, however, is factually and legally distinct. Petitioner crossed the southern border without legal status, has not established that he has been in the United States continuously for two years, and, thus, was processed for expedited removal under 8 U.S.C. § 1225(b)(1)(A).

## STANDARD OF REVIEW

"A motion to dismiss based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1) raises the question of whether the court has the competence or authority to hear the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). "Federal courts are courts of limited jurisdiction[,]" possessing "only that power authorized by Constitution and statute." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010) (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). The Petitioner, as the party asserting jurisdiction, bears

---

[2] Respondents acknowledge that all of the Judges in this district, including this Court, that have considered the legal arguments presented by Respondents with respect to 8 U.S.C. § 1225(b)(2), have issued decisions unfavorable to Respondents. *See*, e.g., *Rasul Umarov v. Trump et al*, Civil Action No. 2:26-cv-00081; *Solano v. Mason et al*, 2:26-cv-00045; and *Larrazabal-Gonzaleaz*, 2:26-cv-00049.

the burden of establishing it. *Id.* When the Respondents assert that facts outside of the complaint deprive the court of jurisdiction, the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004). A Rule 12(b)(1) motion "must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

### STATUTORY & REGULATORY BACKGROUND

Before proceeding to the factual and legal premise of the instant habeas petition, it is important to explain the statutory and regulatory provisions governing petitioner's civil immigration detention. The various statutory bases on which the United States may seek to remove a non-citizen from the country, the instances in which the United States is either required (or has the discretion) to detain such aliens, and the interaction between the two, have been the subject of extensive recent judicial discussion. *See generally DHS v. Thuraissigiam*, 591 U.S. 103 (2020); *Jennings v. Rodriguez*, 583 U.S. 281 (2018).[3] The instant petition concerns the difference between

---

[3] Respondents recognize that *Jennings* plurality opinion could be construed that § 1226 applies to "aliens already in the country". *See Jennings*, 583 U.S. at 289. All the judges in this district to consider the issue have adopted that narrow reading. *See Yuri Jhoana Gutierrez Aroca and Arley Cabrera Valenzuela v. Christopher Mason*, et al., Civ. Action No. 2:26-cv-57, Mem. Op. at fn 22 (S.D. W.Va. February 9, 2026) (Goodwin, J.); *see* also *Rasul Umarov v. Trump et al*, Civil Action No. 2:26-cv-00081, Mem. Op. at fn 4 (February 11, 2026 (Berger J.). Respondents assert that is a misreading of the **plurality opinion** as the Supreme Court did not address the question of the court's ability to consider the decision to detain under 8 U.S.C. 1252. *See Jennings*, 589 U.S. at 294-95 J. Alito "they are not challenging the decision to detain them in the first place or to seek removal". . . *See Buenrostro-Mendez v. Bondi*, --- F.4th ----, No. 25-20496, 2026 WL 323330, at *1 (5th Cir. Feb. 6, 2026) (§ 1225(b)(2) requires mandatory detention, and rejected similar arguments raised by the Petitioners). Instead, Respondents argue that the plurality opinion's holding is limited to the narrow legal question of whether or not a bond hearing is required under the INA under 8 U.S.C. 1226.

two types of removal proceedings – "full" removal proceedings, *see* 8 U.S.C. § 1229a, and "expedited" removal proceedings, *see id.* § 1225(b) – and the detention of an alien within the same.

Important to any understanding of this statutory scheme is the concept of "admission." As the Immigration and Nationality Act ("INA") provides, "admission" is "the lawful entry of [an] alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(13)(A). The Supreme Court has explained that "[t]he power to admit or exclude [non-citizens] is a sovereign prerogative," and that the Constitution gives "'the political department of the government' plenary authority to decide which [non-citizens] to admit." *Thuraissigiam*, 591 U.S. at 132 (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892)).

## I.    Detention During "Typical" or "Full" Removal Proceedings

The INA lists a number of different reasons that render an alien inadmissible to the United States in the first instance, *see* 8 U.S.C. § 1182(a), and, even if admitted to the country after inspection by an immigration officer, removable from the United States, *see id.* § 1227. Some of these reasons overlap; others do not. For instance, an alien can be inadmissible to *or* removable from the United States because they committed a "crime involving moral turpitude," *id.* §§ 1182(a)(2)(A)(i); 1227(a)(2)(A)(i), or "engaged in terrorist activities," *id.* §§ 1182(a)(3)(B); 1227(a)(4)(B). But an alien can also be "inadmissible" to the United States for other independent reasons, including for being an alien previously removed from the United States without first obtaining permission to return, *id.* § 1182(a)(9)(A) And an alien can be "removable" from the United States for other independent reasons as well, e.g. violating the conditions of their nonimmigrant visa, *id.* § 1227(a)(1)(C), or being convicted or for committing an aggravated felony, *id.* § 1227(a)(2)(A)(iii), after admission to the United States.

### A.    Proceedings

For many of these aliens, once federal immigration officials conclude that an alien is inadmissible to, or removable from, the United States, those officials place the alien into removal proceedings governed by 8 U.S.C. § 1229a.  In various places, these have been termed "full" or "regular" removal proceedings.  *See, e.g.*, *Innovation Law Lab v. McAleenan*, 924 F.3d 503, 507 (9th Cir. 2019); *In re M-S-*, 27 I. & N. Dec. 509, 509 (A.G. 2019).  Those proceedings commence when federal immigration officials file, with the Executive Office for Immigration Review, a Notice to Appear ("NTA") – which, akin to an indictment, identifies the grounds on which the United States believes the alien to be inadmissible to, or removable from, the country.  *See* 8 C.F.R. § 1239.1(a). Once before an Immigration Judge, both the Department of Homeland Security ("DHS") and the alien (through counsel) are entitled to present evidence on inadmissibility (or removability), as well as on whether the alien is entitled to any relief from removal.  *See* 8 U.S.C. § 1229a(a)(4); *see also* 8 C.F.R. §§ 1240.3-1240.11. After the presiding Immigration Judge issues his or her decision, either DHS or the alien may notice an appeal to the Board of Immigration Appeals ("BIA").  *See* 8 C.F.R. § 1240.15.  If the alien remains dissatisfied after the BIA issues its appellate decision, he or she may seek Article III judicial review by filing a petition for review in the appropriate circuit court of appeals.  *See* 8 U.S.C. § 1252(b)(2).

### B.    Detention

Detention of those aliens who have been placed within these "regular" or "full" proceedings through the issuance of a NTA is governed by 8 U.S.C. § 1226.  As this Court is well aware, Congress *generally* vested federal immigration authorities (as well as Immigration Judges) with discretion on whether to detain these aliens or to release them on some form of bond.  *See* 8 U.S.C. § 1226(a). But on the contrary, Congress *mandated* that certain aliens – not only those

aliens who have engaged in identified criminal conduct, *see id.* § 1226(c); *see also Demore v. Kim*, 538 U.S. 510, 514 (2003), ), but also those "seeking entry into the United States," *Jennings*, 583 U.S. at 297 – be detained during the pendency of these "full" or "regular" removal proceedings without the possibility of release on bond.

## II.      Detention During "Expedited" Removal Proceedings

Congress provided a different, and more truncated, path for certain aliens – what the statute itself calls "expedited removal."  *See* 8 U.S.C. § 1225(b); *see also Las Americas Imm. Advocacy Ctr. v. Wolf*, 507 F. Supp. 3d 1, 18 (D.D.C. 2020) (explaining that through "expedited removal," Congress "unquestionably intended to permit the government to remove certain noncitizens from the United States expeditiously"). This path statutorily applies to those aliens who are apprehended upon "arriv[al]" in the United States (typically at a port of entry) and determined to be inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(C) (for "seek[ing] to procure . . . admission into the United States" either "by fraud or willfully misrepresenting a material fact") or § 1182(a)(7) (for "not [being] in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document"). *See id.* § 1225(b)(1)(A).  But the Secretary of Homeland Security may, in his or her sole discretion, expand eligibility for "expedited removal" "to any or all aliens" who meet the following definition: "an alien . . . who has not been admitted or paroled into the United States, and who has not . . . been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." *Id.* § 1225(b)(1)(A)(iii).  Put simply, the Secretary may apply "expedited removal" to any alien who is inadmissible and has been apprehended by federal immigration authorities within two years of entering the United States.  Any such expansion (or contraction) of

this eligibility on the part of the Secretary is unreviewable.  *See Make the Road New York v. Wolf*, 962 F.3d 612, 632 (D.C. Cir. 2020).

In recent years, the exercise of the Secretary's discretion to expand the class of aliens subject to "expedited removal" – beyond those aliens encountered and deemed inadmissible at a port-of-entry (*i.e.*, "arriving aliens") – has vacillated with the change in presidential administration. On July 23, 2019, the then-Acting Secretary of Homeland Security issued a notice that, for all intents and purposes, expanded the class of aliens subject to "expedited removal" to its statutory limit; *i.e.*, all aliens who were deemed inadmissible pursuant to 8 U.S.C. §§ 1182(a)(6)(C) or (a)(7), "who [were] physically present in the United States without having been admitted or paroled following inspection by an immigration officer," and who had not been "continuously present" in the United States for two (2) years at the time they encountered a federal immigration officer and were deemed inadmissible.  *Designating Aliens for Expedited Removal*, 84 Fed. Reg. 35409, 35414 (July 23, 2019).[4]  After a change in administration, on May 21, 2022, the then-Secretary of Homeland Security rescinded the aforementioned notice, which thus returned the expanded class of aliens subject to "expedited removal" to its pre-July 2019 state:  those aliens "encountered within 100 air miles of the border and within 14 days of their date of entry regardless of the [] method of arrival."  *Rescission of the Notice*, 87 Fed. Reg. 16022, 16022-24 (May 21, 2022).  And most recently, as directed in a presidential Executive Order, *see Exec. Ord.* 14,159, § 9, 90 Fed.

---

[4]The actual notice created a distinction between those aliens who are apprehended within 100 air miles of the United States border and those who are apprehended more than 100 air miles from the United States border.  *See Designating Aliens*, 84 Fed. Reg. at 35414.  That is only because a *previous* designation – issued back in August 2004 – had *already* extended application of "expedited removal" to those aliens apprehended within 100 air miles of the border who had not been physically present in the United States for 14 days.  *See Designating Aliens for Expedited Removal*, 69 Fed. Reg. 48877, 48880 (Aug. 11, 2004).  The more recent notices issued during the past several presidential administrations simply built upon (or maintained) this extension as opposed to replaced it entirely.

Reg. 8443 (Jan. 20, 2025), on January 24, 2025, the then-Acting Secretary of Homeland Security rescinded the May 2022 notice, restoring the previous August 2019 definition of the expanded class of aliens who were subject to "expedited removal." *See Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139, 8139-40 (Jan. 25, 2025) ("[T]he designation . . . restores the scope of expedited removal to the fullest extent authorized by Congress.").

Accordingly, the following aliens are currently eligible for "expedited removal": All aliens who were deemed inadmissible pursuant to 8 U.S.C. §§ 1182(a)(6)(C) or (a)(7), "who have not been admitted or paroled into the United States and who have not affirmatively shown, to the satisfaction of an immigration officer, that they have been physically present in the United States continuously for the two-year period immediately preceding the date of the determination of inadmissibility." *Id.*

### A.    Proceedings

"Expedited removal" proceeds as follows. An alien to whom the United States wishes to apply "expedited removal" must be "order[ed] . . . removed from the United States" by a federal immigration officer "without further hearing" – including any appearance before an Immigration Judge – "unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). If the alien "indicates either an intention to apply for asylum . . . or a fear of persecution," the federal immigration officer must "refer the alien for an interview by an asylum officer." *Id.* § 1225(b)(1)(A)(ii). At this interview, the asylum officer determines whether "the alien has a credible fear of persecution," *id.* §1225(b)(1)(B)(ii); *i.e.*, whether "there is a significant possibility, taking into account the credibility of the statements made by the alien . . . and such other facts as are known to the officer, that the alien could establish

8

eligibility for asylum," *id.* § 1225(b)(1)(B)(v).  What happens next is dictated by the officer's "credible fear" determination.

If the asylum officer concludes that the alien *does not* have a "credible fear of persecution," the alien is to "be ordered removed from the United States without further hearing or review."  *Id.* § 1225(b)(1)(B)(iii)(I).  Nevertheless, the statute – and governing federal regulations – provide some *modicum* of review, but only of the asylum officer's "credible fear" determination.  Put simply, an alien may request extremely limited (and "prompt") review of the adverse "credible fear" determination from an Immigration Judge, which must provide "an opportunity for the alien to be heard and questioned by the Immigration Judge," and must occur within seven (7) days.  *Id.* § 1225(b)(1)(B)(iii)(III); *see also* 8 C.F.R. §§ 235.6(a)(2); 1235.2(a)(2).

If, however, the asylum officer concludes that the alien *does* have a "credible fear of persecution" (or the Immigration Judge reverses – on the aforementioned limited review – a negative "credible fear" determination), the alien is entitled to a "referral" to an Immigration Judge for "further consideration of [his or her] asylum application."  8 U.S.C. § 1225(b)(1)(B)(ii).  Pursuant to federal regulation, that "consideration" occurs within "full" or "regular" removal proceedings – with the exception that such proceedings only seek to determine whether the alien is entitled to asylum or withholding of removal.  *See* 8 C.F.R. §§ 208.30(f)(1); 1208.30(g)(2)(iv)(B).

**B.      Detention**

Unlike aliens placed in "full" or "regular" removal proceedings, the statute is clear that those aliens placed in "expedited removal" proceedings must be detained – save for exceedingly minor circumstances in which federal immigration officers can exercise discretion in favor of release – while their proceedings play out.

9

First, the statute provides that "an alien" placed in "expedited removal" who is still undergoing the "credible fear" interview process – including any review of a negative "credible fear" determination by an Immigration Judge – "shall be detained pending a final determination of credible fear . . . and, if found not to have such a fear, until removed."  8 U.S.C. § 1225(b)(1)(B)(iii)(IV).  Second, if an asylum officer determines that an alien placed in "expedited removal" has a "credible fear of persecution," the statute provides that "the alien shall be detained for further consideration of the application for asylum."  *Id*. § 1225(b)(1)(B)(ii).  As the Supreme Court has held, these statutes "mandate detention . . . until certain proceedings have concluded" (including those for "further consideration of the application for asylum"), without the possibility of release on bond, regardless of the length of time that those proceedings continue.  *Jennings*, 583 U.S. at 297; *see also id.* at 299 (holding that "detention must continue until immigration officers have finished 'consider[ing]' the application for asylum").  Accordingly, the mere fact that the "application for asylum" of an alien placed in "expedited removal" is "considered" during "full" or "regular" removal proceedings does not change the fact that the statute mandates that the alien be detained during those proceedings – thus rendering the alien ineligible for release on bond.[5] *See In re M-S-*, 27 I. & N. Dec. at 515.[6]

---

[5] Although § 1225(b) does not provide for bond hearings, *see Jennings*, 583 U.S. at 297-303, it does contain "a specific provision authorizing release from . . . detention": The Secretary of Homeland Security "may 'for urgent humanitarian reasons or significant public benefit' temporarily parole aliens detained under §§ 1225(b)(1) and (b)(2)," *id.* at 300 (quoting 8 U.S.C. § 1182(d)(5)(A)).

[6] And as such, practically speaking, aliens placed in "expedited removal" are treated – for detention purposes – identically to those aliens who are placed in "full" or "regular" removal proceedings and are subject to "mandatory detention" without eligibility for release on bond pursuant to 8 U.S.C. § 1226(c).

10

In short, although detention is mandatory for those aliens placed in "expedited removal," it is not indefinite. On the contrary, "§§ 1225(b)(1) and (b)(2) . . . provide for detention for a specified period of time" – "until immigration officers have finished 'consider[ing]' the application for asylum or until removal proceedings have concluded." *Jennings*, 583 U.S. at 299. "Once those proceedings end, detention under § 1225(b) must end as well." *Id.* at 297.

## STATEMENT OF FACTS

On July 31, 2026, Petitioner was in a gray Ford F150 that was stopped by Hurricane Police Department, Patrolman Moses, for speeding in a construction zone. *See* Exhibit 1, I-213. The truck was driven by Petitioner Centeno-Pastrana. When asked for driver's license/identification the occupants produced various forms of foreign identification, except for Centeno-Pastrana who presented a U.S. work authorization card. Patrolman Moses contacted ICE ERO based on the identification presented by the occupants, that the occupants spoke primarily Spanish, and they displayed signs of nervousness. *Id.* ICE ERO responded to the scene, interviewed the occupants, and the occupants admitted to being in the country unlawfully. The Petitioners were arrested and transferred to the ICE office in Poca, WV, for processing. *Id.*

Petitioner is a citizen of Honduras, and he entered the country at an unknow place and an unknown time without being inspected by an immigration officer. Petitioner did not claim any humanitarian concerns or fear of being returned to his native country. *Id.* Petitioner was processed as an expedited removal pursuant to 8 U.S.C. 1225(a)(1). He was issued an I-860 (Notice and Order of Expedited Removal), an I-296 (Notice to Alien Ordered Removed), and I-867a and I-867b (Record of Sworn Statement in Proceedings). *Id.*

Petitioner filed his petitioner on July 31, 2026. *Id*. The limited facts offered by petitioner are that he "were arrested the morning of July 31, 2026, near exit 34 in the Hurricane area." *Id.* at

11

¶ 17. Further, the petition asserts that no immigration officer has determined that Petitioner's detainment is justified by a legitimate governmental purpose. *Id.* at ¶ 20. Based on these limited facts, Petitioner challenges his detention pursuant to the (1) Fifth Amendment (¶¶ 29-37), (2) Immigration and Nationality Act (¶¶ 38-41), and the Suspension Clause of the United States Constitution (¶¶ 42-48). Additionally, Petitioner asserts that release is the only appropriate remedy because a hearing before an immigration judge would be futile due to lack of neutrality and fairness in the immigration court system. *Id.* at ¶¶ 49-63. Beyond the fact that the Petitioner was detained by ICE ERO officers on July 31, 2026, pursuant to probable cause that Petitioner was unlawfully present in the United Staes, Respondents deny these assertions and conclusory allegations.

## ARGUMENT

I.    As noted above, and demonstrated in the attached evidentiary documentation, petitioner has now been placed into "expedited removal" proceedings, and ICE has detained him pursuant to § 1225(A)(1). And § 1225 does not simply justify ICE's decision to mandate petitioner during expedited removal proceedings, it mandates that decision. Petitioner was notified that ICE ERO was exercising its discretion to place him in expedited removal proceedings, concluding that petitioner did not articulate a fear of returning to Honduras or demonstrate that he had been continuously present in the United States for more than two years. The INA is clear about whether an alien in exactly these circumstances is subject to civil immigration detention:

> Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.

8 U.S.C. § 1225(b)(1)(B)(iii)(IV). And as the Supreme Court has held, nowhere within this statutory rubric did Congress mention the prospect of a bond hearing for such aliens. *See Jennings*, 583 U.S. at 297. As such, there can be little doubt that petitioner's current detention without the

12

prospect of release on bond, "pending a final determination of credible fear of persecution," is entirely appropriate under the governing statute.

In sum, petitioner is currently subject to detention pursuant to § 1225(b)(1). § 1225(b)(1) clearly provides that an alien in petitioner's precise circumstances is subject to mandatory detention without the prospect of release on bond. This Court should therefore deny the instant petition to the extent that it challenges the statutory premise of petitioner's current detention.

**II.**     An alien in petitioner's circumstances is not entitled to constitutional due process right beyond that which Congress provided via statute. The Supreme Court's recent decision in *Thuraissigiam* considered the due process rights of an alien, like petitioner here, who was apprehended by federal immigration authorities after crossing the border and placed in expedited removal proceedings. *See Thuraissigiam*, 591 U.S. at 114, 138-40.[7]  From an unbroken line of precedent, the Supreme Court identified a "century-old rule regarding the due process rights of an alien seeking initial entry"; *i.e.*, "that Congress is entitled to set the conditions for an alien lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Id.* at 107, 139 (discussing *Niskimura Ekiu v. United States*, 142 U.S. 651 (1982); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953)).  The Supreme Court held that the petitioner in *Thurassigiam* "ha[d] no entitlement to procedural rights other than those afforded by statute."  *Id.* at 107; *see id.* at 140 (explaining that an alien "in [the petitioner's] position has only those rights regarding admission that Congress has provided by statute.").[8]

---

[7] Respondents acknowledge the facts here are different in that the petitioner in *Thuraissigiam* was detained at the border almost immediately after crossing.

[8] To be sure. other jurists in the Circuit have disagreed with this application of *Thuraissigiam* and held that the Supreme Court's holding applied only to an expedited removal alien's due process

Petitioner's detention here is, as an alien placed in expedited removal and detained under § 1225(b)(1) without the possibility of a bond hearing, pragmatically identical to an alien detained under § 1226(c). The Supreme Court has already affirmed the constitutional propriety of mandatory detention under § 1226(c), even for those aliens who may, because they were not apprehended upon initial entry in the United States, enjoy greater due process protections than does petitioner here.

In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court applied the tri-partite due process framework of *Mathews v. Eldridge*, 424 U.S. 319 (1976), to uphold the constitutionality of mandatory detention under § 1226(c). *Demore* reasoned that Congress – "[i]n the exercise of its broad power over naturalization and immigration" and in an effort to address legitimate concerns that "deportable criminal aliens who remained in the United States often committed more crimes before being removed" – was justified in legislating that certain aliens must be detained, without bond hearings, during their removal proceedings. *Demore*, 538 U.S. at 513, 518-22. The *Demore* Court also reasoned that, because the mandatory detention required by § 1226(c) has a

---

rights with respect to his application to remain in the United States and did not speak to the limited constitutional due process rights that such an alien might have in avoiding mandatory detention under § 1225(b)(1). *See*, *e.g. Abreu v. Crawford*, 2025 WL 51475, at *7 (E.D. Va. Jan. 8, 2025) (Nachmanoff, J.); *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 919 (E.D. Va. 2024) Brinkema, J.); *Leke v. Hott*, 521 F. Supp. 3d 597 (E.D. Va. 2021) (Ellis, J.); *Mbalivoto v. Holt*, 527 F. Supp. 3d 838 (E.D. Va. 2020) (Trenga, J.). Respondents respectfully continue to disagree with the conclusions reached in these decisions; namely, as the Supreme Court noted, "a concomitant" of the government's "plenary authority to decide which aliens to admit" is "the power to set the *procedures to be followed* in determining whether an alien should be admitted." *Thuraissigiam*, 592 U.S. at 139 (emphasis added). A century of binding precedent establishes that "detention or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens," is a "valid" part of those procedures. *Wong Wing v. United States*, 163 U.S. 228, 235 (1896). In any event, for the reasons stated *infra*, even were this Court to adopt these alternative decisions on the upshot of *Thuraissigiam* and conclude that petitioner has some independent constitutional due process right regarding his detention while in expedited removal proceedings, these alternative decisions provide him with little assistance.

14

"definite termination point" – the end of an alien's removal proceeding – and does not require "indefinite" or "potentially permanent" detention, detention without a bond hearing until that definite termination point does not violate due process. *Id.* at 513, 528-31.

This definite-termination-point, the Court reasoned, distinguished *Demore* from *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, the Court addressed post-removal-proceeding-but-pre-removal detention under 8 U.S.C. § 1231(a)(6) and concluded that after a presumptively reasonable six-month period, continued detention under § 1231 could raise due process concerns. *Id.* at 701. In *Demore*, the Court held that *Zadvydas* was "materially different . . . in two respects": (1) unlike detention under § 1231, detention under § 1226(c) "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed," *id.* at 528; and (2) unlike detention under § 1231 – which "was 'indefinite' and 'potentially permanent'" – detention under § 1226(c) "ha[s] a definite termination point" and a "shorter duration," *id.* at 528-29.

Given the similar nature of § 1226(c) and § 1225(b), the reasoning of *Demore* equally applies to render mandatory detention for those aliens within expedited removal proceedings under § 1225(b) constitutional. As noted above, the Supreme Court itself has held that detention under § 1225(b) is not indefinite; it has a clearly defined endpoint. *Jennings*, 138 S. Ct. at 844 ("Both [§ 1225(b)(1) and (b)(2)] mandate detention until a certain point and authorize release prior to that point only under limited circumstances."). And Petitioner's detention while in expedited removal proceedings is consistent with the purposes of § 1225(b)(1). As the Supreme Court explained it "more than a century ago," removal proceedings "would be vain if those accused could not be held in custody pending the inquiry into their true character." *Demore*, 538 U.S. at 523 (quoting *Wong*

15

*Wing v. United States*, 163 U.S. 228, 235 (1896)); *see also Clerveaux v. Searls*, 397 F. Supp. 3d 299, 314 (W.D.N.Y. 2019) (noting "the government's compelling interest in preserving its 'ability to later carry out its broader responsibilities over immigration matter.'" (quoting *Doherty v. Thonburgh*, 943 F.2d 204, 211 (2d Cir. 1991))).

## CONCLUSION

For the foregoing reasons, the Petition should be dismissed and Petitioner's demands to be released from detention should be denied.

Dated: August 3, 2026

Respectfully submitted,

Moore Capito
United States Attorney

By:        */s/ Matthew C. Lindsay*
Matthew C. Lindsay (Bar No. 7896)
Assistant United States Attorney, SD W.VA.
300 Virginia Street East, Suite 4000
Charleston, West Virginia 25301
Office: (304) 345-2200
Email: matthew.lindsay@usdoj.gov

16

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### HUNTINGTON DIVISION

CESAR ONIEL CENTENO PASTRANA,
YIMI JOSUE MANIA, VICTOR ANTONIA
ORDONEZ CASTILLO, RONI JOSUE
HERNANDEZ GARCIA, and WILSON
LENOEL PEREZ MARAGIAGA, by
and through their next friend, KYLE
SLONE,

     Petitioners,

v.                                  CIVIL ACTION NO. 3:26-cv-00486

DAVID VENTURELLA, Acting Director,
United States Immigration and Customs Enforcement,
MARKWAYNE MULLIN, Secretary of Homeland Security,
TODD BLANCHE, Acting United States Attorney General,
DAVID KLUEMPER, Supervisory Detention and Deportation Officer,
United States Immigration and Customs Enforcement,
KENNETH BARNETT, Supervisory Detention and Deportation Officer,
United States Immigration and Customs Enforcement, and
JOHN RIFE, Field Office Director, Philadelphia Field Office,
United States Immigration and Customs Enforcement,
in their official capacities,

     Respondents.

## CERTIFICATE OF SERVICE

       I hereby certify that on August 3, 2026, I electronically filed the foregoing *Response to Show Cause Order* and Exhibits with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participant:

| | |
|---|---|
| *Jonathan Sidney Pro Hac Vice* | Sarah K. Brown (WVSB #10845) |
| Colorado Bar No. 52463 | W. Va. Bar No. 10845 |
| Ohio Bar No. 0100561 | Mountain State Justice, Inc. |
| P.O. Box 97 | 1217 Quarrier St. |
| Forest Hill, WV | Charleston, WV 25301 |
| Phone: (681) 335-0074 | Phone: (304) 344-3144 |
| jsidney@climatedefenseproject.org | sarah@msjlaw.org |
| *Counsel for Petitioner* | |

/s/ Matthew C. Lindsay
Matthew C. Lindsay (Bar No. 7896)
Assistant United States Attorney, SD W.VA.
300 Virginia Street East, Suite 4000
Charleston, West Virginia 25301
Office: (304) 345-2200
Email: matthew.lindsay@usdoj.gov
*Counsel for Federal Respondents*

18